UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

          v.

KIRK COTTOM,

          Defendant.
_____

**DECISION AND ORDER**

6:15-CR-06054 EAW

(District of Nebraska Case Nos. 8:13-CR-108 and 8:15-CR-239)[1]

## BACKGROUND

A four-count indictment against Defendant Kirk Cottom ("Defendant") was returned in this District on April 21, 2015. (Dkt. 1). On July 31, 2015, the Court granted

---

[1] There were two cases pending in the District of Nebraska—one that originated in that court, *United States v. Cottom*, case no. 8:13-CR-108 (hereinafter "case no. 8:13-CR-108"), and one originally opened in this District as case no. 6:15-CR-06054 and then transferred, *United States v. Cottom*, case no. 8:15-CR-239 (hereinafter "case no. 8:15-CR-239"). Defendant pled guilty to a violation of 18 U.S.C. § 2252A(a)(5)(B) in case no. 8:13-CR-108 and a violation of 18 U.S.C. § 2252A(a)(2)(A) in case no. 8:15-CR-239, and he was sentenced to a concurrent sentence in both cases of 72 months incarceration. Case no. 8:13-CR-108 was then transferred to this Court upon completion of the prison sentence, and opened in this District as case no. 6:21-cr-06067. However, the parties' arguments concerning the special conditions of supervised release have focused on the conditions entered in case no. 8:15-CR-239. (*See* Dkt. 36-7). The special conditions entered in the Nebraska court were not identical—specifically, in case no. 8:13-CR-108, the drug testing requirement was suspended (*see* case no. 8:13-CR-108, Dkt. 272, special condition 2), whereas in case no. 8:15-CR-239 the drug testing requirement was imposed (*see* case no. 8:15-CR-239, Dkt. 26, special condition 3). Nonetheless, because the parties' arguments have focused on the special conditions imposed in case no. 8:15-CR-239, the Court will reference the special conditions set forth in the judgment entered in that case for purposes of the discussion in this Decision and Order. The Court will also enter this Decision and Order in the case opened upon the transfer of the case to this District for purposes of supervision (*i.e.* case no. 6:21-cr-06067).

a consent motion to transfer the case to the United States District Court for the District of Nebraska pursuant to Federal Rule of Criminal Procedure 21(b). (Dkt. 14).

On August 3, 2015, Defendant pled guilty in the District of Nebraska to a violation of 18 U.S.C. § 2252A(a)(5)(B) (access with intent to view child pornography) and 18 U.S.C. § 2252A(a)(2)(A) (receipt of child pornography). (Dkt. 36-2). On December 17, 2015, he was sentenced to 72 months imprisonment concurrent, to be followed by six years of supervised release. (Dkt. 36-4). The sentencing court further imposed 19 special conditions of supervision. (Dkt. 36-7).

Defendant was released from custody in February of 2021. (Dkt. 36 at ¶ 14). On February 10, 2021, and February 11, 2021, he filed two motions in this District arguing that his conviction and sentence are unconstitutional and should be vacated. (Dkt. 16; Dkt. 17) (the "§ 2255 Motions"). On March 9, 2021, the Court entered an Order transferring Defendant's § 2255 Motions to the District of Nebraska. (Dkt. 19). The Court explained that "[b]ecause both of Defendant's motions challenge the imposition of Defendant's underlying conviction and sentence, and because the conviction and sentence challenged were entered in the District of Nebraska," this Court lacked jurisdiction to grant the relief requested by Defendant pursuant to 28 U.S.C. § 2255. (*Id*. at 1-2). Defendant filed a motion for reconsideration of the Court's transfer order (Dkt. 20), which the Court denied on April 15, 2021 (Dkt. 21).

On April 26, 2021, this Court accepted jurisdiction over Defendant's supervised release pursuant to 18 U.S.C. § 3605. Defendant thereafter filed a document entitled "Motion for status update" in which he argued that the Court's acceptance of jurisdiction

over his supervised release rendered this an appropriate venue for his § 2255 Motions. (Dkt. 22). Defendant filed a brief in further support of this motion on May 27, 2021 (Dkt. 24), and the government filed its opposition on June 10, 2021 (Dkt. 25). The Court denied this motion by Decision and Order dated July 20, 2021. (Dkt. 33).

On July 1, 2021, Defendant filed a *pro se* motion seeking to modify the conditions of his supervised release. (Dkt. 26). The government filed its response to Defendant's *pro se* motion on July 30, 2021. (Dkt. 30).

Defendant was subsequently assigned counsel and filed a supplemental motion to modify the conditions of his supervised release on September 23, 2021. (Dkt. 36). The government responded to the supplemental motion on September 24, 2021. (Dkt. 37). The Court heard oral argument on October 15, 2021, and reserved decision. (Dkt. 38).

## DISCUSSION

### I. Legal Standard

"A court 'may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release' after considering certain sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (quoting 18 U.S.C. § 3583(e)(2)). While it is relevant to the Court's analysis whether there are "new or changed circumstances with respect to the defendant," a finding of the same is not required to justify a modification.

*Id.*[2]  Whether to grant a requested modification is within the Court's discretion.  *See id.* (citing *United States v. Brown*, 402 F.3d 133, 136 (2d Cir. 2005)).

As an initial issue, the Court notes that Defendant's requested modifications are based, in significant part, on his challenge to the manner in which the sentencing judge imposed the special conditions.  (*See* Dkt. 36 at 8-9 (citing *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018)).  Among other things, Defendant argues that "all the special conditions of supervised release should be stricken because the sentencing court failed to make an individualized assessment when determining whether to impose each of the special conditions[.]"  (*Id*. at 8).  However, as this Court explained at length in its decisions regarding Defendant's § 2255 motions, any claim that a "sentence was imposed in violation of the Constitution or laws of the United States" must be brought before "the court which imposed the sentence."  28 U.S.C. § 2255(a).  Further, the fact that this Court has accepted jurisdiction over Defendant's supervised release does not change this conclusion.  (*See* Dkt. 33 at 4-5 (collecting cases)).  This Court simply is not the appropriate forum for Defendant's assertion that his original sentence was legally erroneous, including his facial challenges to the validity of the special conditions of supervised release.  *See United States v. Villafane-Lozada*, 973 F.3d 147, 152 (2d Cir. 2020) ("[T]he illegality of a condition of supervised release is not a proper ground for modification under 18 U.S.C. § 3583." (quotation omitted)); *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997) ("Subsection

---

[2]   Here, Defendant has not identified any new or changed circumstances supporting his requested modifications.  While this is not dispositive of his motion, the Court has taken it into consideration while assessing his arguments.

3583(e)(2) on its face authorizes the court to modify conditions of supervised release only when general punishment goals would be better served by a modification. It does not authorize the court to assess the lawfulness of a condition of release. Other procedures, such as a direct appeal under 18 U.S.C. § 3742 or a collateral attack under 28 U.S.C. § 2255, are available to challenge the legality of a condition of supervised release, as long as the requirements of those procedures have been met.").

Accordingly, the Court will not consider, in resolving the pending motion for modification, Defendant's arguments related to the legality of the original imposition of the special conditions. Instead, this Court has limited its consideration to whether a modification is warranted in light of the statutory factors.

## II.     Requests for Modification

### A.     Special Conditions 1, 10, 14, 17, and 19

Defendant's only arguments as to Special Conditions 1, 10, 14, 17, and 19 are his attacks on the validity of the imposition of his sentence. (*See* Dkt. 26 at 1; Dkt. 36 at ¶ 36). As set forth above, this Court is not the proper forum for those arguments. The Court accordingly will not modify these conditions of supervised release.

### B.     Special Conditions 2 and 3

The government has confirmed that it does not object to striking Special Condition 2 (requiring Defendant to participate in a victim awareness program) and Special Condition

3 (requiring Defendant to submit to ongoing drug testing).[3] (*See* Dkt. 30 at 2). For the reasons discussed on the record on October 15, 2021, the Court finds that removing Special Conditions 2 and 3 is appropriate.

### C.     Special Conditions 4, 5, 6, and 8

Special Conditions 4, 5, 6, and 8 all impose restrictions related to Defendant's use of computers. Special Condition 4 requires Defendant to "provide the U.S. Probation Officer with truthful and complete information regarding all computer hardware, software, electronic services, and date storage media to which [he] has access." (Dkt. 36-7 at 1). Special Condition 5 requires Defendant to "cooperate with the U.S. Probation Office's Computer Monitoring Program," including by allowing the installation of monitoring software/hardware on any "computer systems, Internet capable devices, and/or similar electronic devices" to which he has access and by "inform[ing] all parties that access a monitored computer, or similar electronic device, that the device is subject to monitoring." (*Id.*). Special Condition 6 limits Defendant "to possessing only one personal Internet capable device" for purposes of facilitating the monitoring of his internet access and further requires Defendant to allow random examinations of such device and to pay the costs of monitoring. (*Id.*). Special Condition 8 prohibits Defendant from using or having installed "any programs specifically and solely designed to encrypt data, files, folders, or volumes

---

[3]     The Court questions whether drug testing is even a special condition currently imposed, since as noted in footnote 1, it was not a condition imposed in case no. 13-CR-108, which is the case transferred to this Court for supervision.

on any media" and from installing or using "any program for the purpose of 'wiping,' deleting or cleaning any media device." (*Id*. at 2).

Defendant contends that Special Conditions 4, 5, 6, and 8 are overly broad and unnecessarily restrictive, and that they prohibit him from earning a living in his profession as a computer systems analyst. (Dkt. 36 at 9-11). The Court is unpersuaded by these arguments. Special conditions of supervised release are appropriate so long as they are "'reasonably related' to: (A) 'the nature and circumstances of the offense and the history and characteristics of the defendant'; (B) 'the need for the sentence imposed to afford adequate deterrence to criminal conduct'; (C) the protection of the public; and (D) the rehabilitative and medical care needs of the defendant." *Parisi*, 821 F.3d at 348 (quoting *Brown*, 402 F.3d at 136-7). A special condition "must also involve no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing, and it must be consistent with any pertinent policy statements in the [Sentencing] Guidelines." *Id*. (quotations omitted).

Here, Defendant was convicted of a child pornography offense. The Second Circuit has upheld, in child pornography cases, special conditions requiring that the defendant "participate in the Computer/Internet Monitoring Program administered by the U.S. Probation Office," and limiting the defendant to one internet-capable device "in order to facilitate the U.S. Probation Office's ability to effectively monitor [the defendant's] internet related activities." *United States v. Savastio*, 777 F. App'x 4, 6 (2d Cir. 2019) (quotations omitted); *see also United States v. Rubel*, 823 F. App'x 1, 6 (2d Cir. 2020) (special condition allowing probation "to install any application or software that allows it

to survey and/or monitor all activity on any computer(s), automated service(s), or connected devices that the defendant will use during the term of supervision and that can access the internet" was reasonably necessary for sentencing purposes).  Special Conditions 5 and 6 are equivalent to these conditions.

Special Condition 4 requires Defendant to do nothing more than provide accurate information to his probation officer, and Defendant has failed to plausibly support his contention that this condition is unduly burdensome.  Finally, Special Condition 8 is clearly designed to ensure that Defendant cannot circumvent the monitoring of his devices or evade detection of unlawful internet use.  This is particularly important, because, as the Eighth Circuit explained in denying Defendant's direct appeal of his conviction, the underlying crime in this case involved the use of websites "on a clandestine network, accessible only with special software and designed to obscure a user's identity." *United States v. Cottom*, 679 F. App'x 518, 519 (8th Cir. 2017).  Further, as the sentencing judge noted at a hearing on Defendant's motion to withdraw his guilty plea, Defendant "has a high degree of sophistication on how to operate computers" and "knows how to wipe machines." (Dkt. 36-3 at 7); *see United States v. Johnson*, 446 F.3d 272, 282 (2d Cir. 2006) (upholding special condition barring defendant from possessing any devices with internet capability in part because he was "a sophisticated computer user (and an experienced engineer)" who "likely could circumvent the software needed for monitoring").

Under the circumstances, all of these special conditions are "reasonably necessary for the broad sentencing purposes indicated in U.S.S.G. § 5D1.3(b) and 18 U.S.C. § 3553(a)(2), including specific deterrence, public protection, and rehabilitation," and are

further "reasonably related to the nature and circumstances of the offense and [the defendant's] history and characteristics." *United States v. Browder*, 866 F.3d 504, 512 (2d Cir. 2017) (quotations omitted and upholding computer monitoring special conditions in child pornography case). Further, while Defendant contends that these special conditions make "employment in [his] line of work impossible" (Dkt. 36 at 10), this argument appears to be mere speculation. Defendant has not identified any particular job that he has been unable to obtain as a result of the special conditions.

Defendant also argues that: (1) Special Condition 5 unlawfully delegates too much authority to the probation officer; (2) Special Condition 5 unlawfully infringes on Defendant's First Amendment right to access the internet; (3) Special Condition 6 unlawfully gives the probation officer too much discretion in determining whether Defendant can use or possess computers; and (4) Special Condition 6's requirement that Defendant pay for monitoring unlawfully infringes on Defendant's "First Amendment right to access and communication on the internet." (Dkt. 36 at 10-11).

"The power to impose special conditions of supervised release . . . is vested exclusively in the district court." *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (citing 18 U.S.C. § 3583). It is a statutory violation for a district court to "delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Id*. Accordingly, to the extent that Petitioner is launching a facial challenge to the special conditions on the basis that they delegate too much authority to the probation officer, he is contending that the special conditions were "imposed in violation of the Constitution or laws of the United

States." 28 U.S.C. § 2255.  These contentions of facial invalidity must be made in the sentencing court, as discussed above.  The same analysis applies to Petitioner's claim that Special Condition 5, on its face, unlawfully infringes on his First Amendment right to access the internet.[4]

To the extent Defendant is arguing that his probation officer has engaged in an unauthorized exercise of discretion in practice, he has set forth no facts to support such a conclusion.  Accordingly, no modification of the special conditions is warranted on this basis.

With respect to Defendant's claim that the requirement that he pay the costs of monitoring violates his rights, the Second Circuit has held that such a contention is not ripe at the time of sentencing, because the analysis depends on "what the costs of the monitoring program will be and whether [the defendant] will be able to afford those costs. . . ." *United States v. Vietor*, 806 F. App'x 60, 63 (2d Cir. 2020).  In other words, "if circumstances should change such that the cost of monitoring . . . become[s] prohibitive, [a defendant] can always return to the district court to request a modification of the condition." *United States v. Dill*, 822 F. App'x 19, 23 (2d Cir. 2020).  However, Defendant has not presented the Court with information regarding the costs of monitoring or his ability to pay.  On this record, the Court does not find that a modification of Special Condition 6 is warranted.

For all these reasons, the Court finds that Defendant has not demonstrated that it is necessary for Special Conditions 4, 5, 6, and 8 to be modified at this time.  Nevertheless,

---

[4] In any event, as discussed above, the Second Circuit has upheld the facial validity of special conditions functionally identical to Special Conditions 5 and 6.

in the exercise of its discretion, the Court will slightly modify Special Condition 5, to use language that the Court finds more clearly delineates the role of the Probation Office and the limitations on Defendant. These modifications will allow for the effective supervision of Defendant and the prevention of future unlawful activity. Specifically, Special Condition 5 is modified to read as follows:

> The defendant shall not use or possess any computer, data storage device, or any internet capable device unless the defendant participates in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision. The U.S. Probation Office is authorized to install any application as necessary to surveil all activity on computer(s) or connected device(s) owned or operated by the defendant. The defendant will be required to pay the cost of monitoring services.

### D. Special Condition 7

Special Condition 7 imposes a search condition. It requires Defendant to "submit [his] person, residence, property, office, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to a search conducted by a U.S. Probation Officer at any time" and further to "warn any other residents that the premises and any shared devices may be subject to searches pursuant to this condition." (Dkt. 36-7 at 2). Defendant contends without further elaboration that this condition "involves a greater deprivation of liberty than is reasonably necessary." (Dkt. 36 at 11). The Court disagrees. Special Condition 7 is reasonably necessary to deter future criminal conduct by Defendant and to protect the public. Indeed, the Sentencing Guidelines recommend that such a condition be imposed in cases involving "sex offenses," which

includes violations of 18 U.S.C. § 2252A(a)(5)(B) and (a)(2)(A).  See U.S.S.G. § 5D1.3(d)(7); U.S.S.G. § 5D1.2, App. Note 1; *Parisi*, 821 F.3d at 348.

      E.      **Special Conditions 9, 11, and 12**

Special Condition 9 prohibits Defendant from having contact or residing with children under the age of 18, including his own children, unless approved in advance by the probation officer in consultation with his treatment providers. (Dkt. 36-1 at 2). Special Condition 11 restricts Defendant from working in "any occupation, business, or profession, including volunteer work, where [he] has access to children under the age of 18" without prior approval from his probation officer. (*Id.*). Special Condition 12 requires Defendant to have "all residences and employment" preapproved by the probation officer at least ten days prior to moving or changing employment. (*Id.*).

Defendant argues that these conditions are not reasonably related to the sentencing factors and are "a far greater deprivation of liberty than necessary" because "nothing in the record supports [the conclusion that Defendant] has ever abused children or has any desire to [do so]." (Dkt. 36 at 12). This argument is unpersuasive. The conduct of which Defendant was convicted is evidence of his sexual interest in children. Further, in his plea agreement, Defendant acknowledged that there were "well in excess of 600 images of child pornography and significant internet activity showing access to child pornography websites[.]" (Dkt. 36-2 at 4). Defendant's current insistence on his innocence despite having admitted to this conduct strongly indicates that he is in denial regarding his proclivities. This conclusion is bolstered by the discharge summary from Mid-Erie Counseling and Treatment Services provided to the Court in connection with case no. 6:21-

CR-06067, which reflects Defendant's refusal to accept that he could benefit from mental health treatment. The Court believes Defendant's unwillingness to acknowledge and attempt to treat his sexual interest in children presents a clear danger of future misconduct.[5]

But separate and apart from Defendant's refusal to acknowledge responsibility for the underlying criminal conduct, the reality is that the facts to which Defendant admitted as part of his guilty pleas and the underlying offenses of conviction support the need for the imposition of these special conditions of supervision. The special conditions regulating Defendant's access to minor children are directly related to Defendant's history and the nature of his offenses and are, with one exception discussed below, reasonably necessary to deter future criminal conduct by Defendant and to protect the public. *Cf. United States v. Bleau*, 930 F.3d 35, 43 (2d Cir. 2019) (explaining that special condition "prohibiting direct contact with minors without pre-approval from the Probation Office" may be warranted in certain child pornography cases).

---

[5] After the oral argument in this matter on October 15, 2021, Defendant submitted a report from Jacqueline Bashkoff, Ph.D., dated November 23, 2021, wherein she opines that Defendant is a low risk to reoffend and the failure to accept responsibility does not correlate with a risk of recidivism. (*See* Dkt. 40). Notwithstanding this report and the authorities cited therein in support of that conclusion, the Court is not persuaded that there is a lack of correlation between Defendant's refusal to accept responsibility and his risk of danger to the community, as common sense suggests that one must accept that a problem exists before being able to treat the problem. *See United States v. Cossey*, 632 F.3d 82, 88 (2d Cir. 2011) ("Of course, a psychologist's report is no substitute for a sentencing court's 'independent evaluation of the defendant in light of the' § 3553(a) factors; and where a 'psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so." (quoting *United States v. DeSilva*, 613 F.3d 352, 356-57 (2d Cir. 2010) (per curiam))).

However, the Court does find that the restriction in Special Condition 9 that Defendant may not have any contact with his own children imposes a greater deprivation of liberty than necessary. The burden of not having contact with one's own children is very significant, and the Court is not persuaded that, given Defendant's current circumstances, it is necessary in this case. Accordingly, the first sentence of Special Condition 9 is modified to provide that "Defendant shall not have deliberate contact with any child under 18 years of age, excluding his biological or adopted children, unless approved by the probation officer or by the Court."

### F. Special Condition 13

Special Condition 13 requires Defendant to "consent to third party disclosure to any employer, or potential employer, concerning any computer-related restrictions that are imposed upon him/her unless excused by the U.S. Probation Officer." (Dkt. 36-7 at 2). Defendant argues that this special condition is unlawful because it delegates too much discretion to the probation officer. (Dkt. 36 at 12). As noted above, to the extent Defendant is making a facial challenge to the lawfulness of the special condition, such challenge must be brought, if at all, in a motion under § 2255 before the sentencing court.

To the extent Defendant is arguing about the specific application of Special Condition 13 to his specific circumstances, he has presented no support for his claim. The Court notes that disclosure of the computer-related restrictions to an employer or potential employer is a necessary corollary of the monitoring requirement. In other words, the probation officer would not be able to gain access to the employer's equipment to install the monitoring software without first advising the employer of the monitoring condition.

This distinguishes the instant matter from *United States v. Boles*, 914 F.3d 95 (2d Cir. 2019), *cert. denied*, 139 S. Ct. 2659 (2019), cited by Defendant, in which the Second Circuit disapproved a special condition granting the probation officer "unfettered discretion" to require the defendant to advise employers of his conviction if the probation officer determined the defendant posed a "risk" to the employer. *Id*. at 112. Here, the sentencing court reasonably determined that it was generally necessary for employers to be advised of the computer-related restrictions, and merely left to the probation officer the ability to excuse such disclosure where not warranted (for example, if Defendant were to obtain a job in which he would not have access to computers). *See United States v. MacMillen*, 544 F.3d 71, 77 (2d Cir. 2008) (rejecting challenge to special condition authorizing probation to discuss the defendant's conviction with employers because, when read in conjunction with the special condition "specifically authoriz[ing] Probation to monitor [the defendant's] computer use and conduct unannounced inspections of any computers he may use—including computers he uses at work," it was "pellucidly clear that employers are to be notified of [the defendant's] conviction when, because of the nature of employment, there is a possibility that [the defendant] will have access to a computer, and thus be presented with the opportunity to obtain computerized images of child pornography" and thus "Probation will not be operating in a vacuum when it considers whether and in what situations an employer should be informed of [the defendant's] child pornography offense").

      Further, while Defendant contends that this special condition makes it "impossible for him to secure a job," he has again failed to provide any factual support for that

contention. In particular, he has not identified any potential employers who have refused to hire him after learning of the monitoring conditions. The Court does not find a modification of Special Condition 13 warranted at this time. Of course, Defendant is free to seek relief from the Court in the event he requests an exemption from disclosure that is denied by the probation officer, or if changed circumstances otherwise warrant a revisiting of Special Condition 13.

### G. Special Conditions 15 and 16

Special Condition 15 requires Defendant to submit to polygraph testing at intervals determined by his probation officer. (Dkt. 36-7 at 2). Special Condition 16 requires Defendant to "undergo a sex-offense specific evaluation and participate in a sex offender treatment and/or mental health treatment approved by the U.S. Probation Officer," which may require "submission to polygraph testing." (*Id*. at 3). Defendant is further required by Special Condition 16 to "sign releases of information to allow all professionals involved in [his] treatment and monitoring to communicate and share documentation." (*Id*.).

Defendant contends that these conditions are unlawful because they are vague and overbroad and delegate too much authority to the probation officer. As the Court has explained repeatedly above, Defendant's facial attacks on the special conditions are not properly before this Court. *See Villafane-Lozada*, 973 F.3d at 151 (distinguishing between claim that special condition was on its face an unlawful "delegation of judicial power to a probation officer" and challenge to "some hypothetical decision that this delegation might allow in the future," such as choice between different types of truth verification technology).

As to specific arguments regarding these special conditions, Defendant contends that Special Condition 15 "fails to consider [Defendant's] ability to pay, and relies upon a machine and technique with questionable scientific validity." (Dkt. 35 at 12). The Court is not persuaded by these arguments. The Second Circuit has "recognized the strong deterrent value of polygraph conditions" in child pornography cases, "explaining that such conditions further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty." *Boles*, 914 F.3d at 112 (quotation omitted). Further, Defendant has failed to present the Court with any information regarding his ability to pay or supporting his claims regarding the reliability of polygraph technology.

Nevertheless, and again in the exercise of its discretion, the Court will modify Special Condition 15 to use language that the Court finds more clearly sets forth the probation officer's role and Defendant's rights and obligations. Again, this modification will facilitate the probation officer's supervision. Special Condition 15 is modified to provide as follows:

> The defendant shall submit to polygraph testing, not to exceed twice in a calendar year, and an additional two re-tests per year, as needed. That testing may include examinations using a polygraph to obtain information necessary for supervision, case monitoring, and treatment. The defendant shall answer the questions posed during the examination, subject to the defendant's right to challenge in a court of law the use of such statements as violations of the defendant's Fifth Amendment rights. In this regard, the defendant shall be deemed not to have waived the defendant's Fifth Amendment rights by making any such statements. The results of any polygraph pre-tests and polygraph examinations may be disclosed to the U.S. Probation office and the Court, but shall not be further disclosed without a court order. The defendant is required to contribute to the cost of services rendered.[6]

---

[6] This language is consistent with the typical language imposed in this District for this type of special condition—with the exception that this District also permits

As to Special Condition 16, the Second Circuit has held that it is generally not unlawful to delegate to the probation officer "the selection of a therapy provider or treatment schedule." *Matta*, 777 F.3d at 122. Defendant has not identified anything particular to this case that would warrant a different conclusion.

Defendant also argues that Special Condition 16 "has an adverse effect on sentencing goals" because "if [Defendant] did have an issue to address with a treatment provider, the fact that it could be shared with anyone would understandably cause him pause to address the issue." (Dkt. 36 at 13). First, Defendant misreads Special Condition 16. It does not say that Defendant's mental health treatment can be "shared with anyone," but only with the "professionals involved in [his] treatment and monitoring." (Dkt. 36-7 at 3). Second, the Second Circuit has upheld a special condition where "[i]n connection with the requirement that [the defendant] attend a sex offender and/or mental health treatment program approved by his probation officer, the district court ordered him to waive therapeutic confidentiality in 'any records for mental health assessment and treatment . . . to allow the probation officer to review the defendant's course of treatment and progress with the treatment provider.'" *United States v. Dupes*, 513 F.3d 338, 344 (2d Cir. 2008) (alteration in original). The *Dupes* court explained that "[w]hile it could be argued that the waiver condition may retard [the defendant's] treatment, it very well may advance his treatment by allowing the probation officer to monitor [his] progress and, if

---

"computerized voice stress analyzer or other such testing." However, since the original condition only permitted polygraph testing, the Court has accordingly limited the modified special condition to testing only by polygraph.

necessary, make adjustments to his court-ordered therapy program." *Id.*; *see also United States v. Dill*, 822 F. App'x 19, 22 (2d Cir. 2020) ("[The defendant] further argues that permitting the probation officer to access his treatment records violates his privacy interests in his treatment and treatment records. . . . The argument fails. We have previously upheld a condition of supervised release requiring a defendant to waive confidentiality of records relating to his sex offender treatment in the interest of public safety." (quotation omitted)).

### H. Special Condition 18

Special Condition 18 requires Defendant to "provide the probation officer with access to any requested financial information." (Dkt. 36-7 at 3). Defendant contends that this condition is "overly broad and delegates too much authority to probation." (Dkt. 36 at 13). Again, this facial attack on Special Condition 18 is not properly before this Court but must be made to the sentencing court under § 2255.

Further, the Second Circuit has upheld imposition of a special condition requiring a defendant to "provide the U.S. Probation Office with access to any requested personal and/or business financial information" in a child pornography case. *See United States v. Reynolds*, 536 F. App'x 76, 77-78 (2d Cir. 2013). This condition enables the probation officer to confirm that Defendant is not buying or subscribing to online services that provide child pornography.

## CONCLUSION

For the reasons set forth above, Defendant's motion to modify the conditions of his supervised release (Dkt. 26; Dkt. 36) is granted to the extent that Special Conditions 2 and

3 are stricken and Special Conditions 5, 9, and 15 are modified as set forth above, and is denied in all other aspects.

    SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    December 1, 2021
           Rochester, New York