UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **DECISION AND ORDER** |
| v. | 6:15-CR-06054 EAW |
| KIRK COTTOM, | (District of Nebraska Case Nos. 8:13-CR-108 and 8:15-CR-239)[1] |
| Defendant. | |

_____

## BACKGROUND

A four-count indictment against Defendant Kirk Cottom ("Defendant") was returned in this District on April 21, 2015. (Dkt. 1). On July 31, 2015, the Court granted a consent motion to transfer the case to the United States District Court for the District of Nebraska pursuant to Federal Rule of Criminal Procedure 21(b). (Dkt. 14).

On August 3, 2015, Defendant pleaded guilty in the District of Nebraska to a violation of 18 U.S.C. § 2252A(a)(5)(B) (access with intent to view child pornography) and 18 U.S.C. § 2252A(a)(2)(A) (receipt of child pornography). (Dkt. 36-2). On

---

[1] There were two cases pending in the District of Nebraska—one that originated in that court, *United States v. Cottom*, case no. 8:13-CR-108 (hereinafter "case no. 8:13-CR-108"), and one originally opened in this District as case no. 6:15-CR-06054 and then transferred, *United States v. Cottom*, case no. 8:15-CR-239 (hereinafter "case no. 8:15-CR-239"). Defendant pleaded guilty to a violation of 18 U.S.C. § 2252A(a)(5)(B) in case no. 8:13-CR-108 and a violation of 18 U.S.C. § 2252A(a)(2)(A) in case no. 8:15-CR-239, and he was sentenced to a concurrent sentence in both cases of 72 months incarceration. Case no. 8:13-CR-108 was then transferred to this Court upon completion of the prison sentence, and opened in this District as case no. 6:21-cr-06067. Case no. 6:21-cr-6067 was terminated in December of 2021.

- 1 -

December 17, 2015, he was sentenced to 72 months imprisonment concurrent, to be followed by six years of supervised release. (Dkt. 36-4). The sentencing court further imposed 19 special conditions of supervision. (Dkt. 36-7).

Defendant was released from custody in February of 2021. (Dkt. 36 at ¶ 14). On April 26, 2021, this Court accepted jurisdiction over Defendant's supervised release pursuant to 18 U.S.C. § 3605. Defendant thereafter sought modification of the conditions of his supervised release. (Dkt. 26; Dkt. 36). The Court granted Defendant's motion in part and denied it in part by Decision and Order dated December 1, 2021. (Dkt. 41) (the "2021 D&O"). Defendant appealed to the Court of Appeals for the Second Circuit. (Dkt. 43).

On July 7, 2022, while his appeal was still pending, Defendant filed a second motion challenging the validity of his conditions of supervision. (Dkt. 46). The Court denied this motion without prejudice to refiling upon the resolution of Defendant's appeal. (Dkt. 51).

By Summary Order dated March 2, 2023, the Second Circuit affirmed the 2021 D&O. (Dkt. 59). The next day, on March 3, 2023, Defendant filed a motion for early termination of his supervised release or, in the alternative, to strike special conditions 4, 5, 6, 7, 8, 11, 12, and 13. (Dkt. 52). Defendant also filed two motions for a subpoena duces tecum—one to U.S. Probation and Pretrial Services (the "Probation Office") and one to attorney Joseph Howard, who represented Defendant in the District of Nebraska. (Dkt. 53; Dkt. 54).

The government filed a response in opposition to Defendant's motion for early termination or to strike on March 24, 2023. (Dkt. 56). The Probation Office also opposes

Defendant's request. (Dkt. 60). Defendant filed a reply on April 7, 2023 (Dkt. 61) and a further letter memorandum on June 9, 2023 (Dkt. 62).

For the reasons set forth below, the Court denies all three pending motions filed by Defendant.

## DISCUSSION

### I. Motions for a Subpoena Duces Tecum

Defendant asks the Court to issue two subpoenas. As an initial matter, Defendant has cited nothing suggesting that issuance of a subpoena is appropriate in connection with a request for early termination of supervised release. "[F]ederal criminal discovery is far more limited than federal civil discovery[.]" *United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018). While some courts have recognized post-trial issuance of a subpoena pursuant to Federal Rule of Criminal Procedure 17(c) as permissible, *see United States v. Nix*, 251 F. Supp. 3d 555, 561 (W.D.N.Y. 2017), "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Federal Rule of Criminal Procedure] 16," *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (quotation omitted). The circumstances presented here do not fall within the parameters of Rule 17(c), the purpose of which is "to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material." *United States v. Barnes*, No. S9 04 CR 186 SCR, 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008).

Even if authorized by Rule 17(c), Defendants' subpoena requests are deficient in other ways. In his first request, he seeks from the Probation Office a copy of the

"Chronological Record" which he indicates is required by "Guide Vol. 8E §470." (Dkt. 53 at 1). This appears to be a reference to Volume 8 of the Guide to Judiciary Policy, which governs Probation and Pretrial Services. However, it is actually Volume 8C § 550 of the Guide to Judiciary Policy that discusses the chronological record, which is "the means by which officers document key elements of the defendant's circumstances and the supervision process with emphasis on the work done to accomplish the desired outcomes of supervision and the results achieved." *Id.*, § 550.10. Defendant contends that he is entitled to this information under the Privacy Act of 1974. (Dkt. 53). However, "probation and supervised release files are under the court's jurisdiction," Guide to Judiciary Policy, Vol. 8E § 510.10, and "the courts of the United States" are expressly excluded from the Privacy Act's definition of an agency, 5 U.S.C. § 551(a)(B). In other words, "[f]ederal probation offices are administrative units of the United States courts, and thus are not subject to the Privacy Act." *Fuller-Avent v. U.S. Prob. Off.*, 226 F. App'x 1, 2 (D.C. Cir. 2006); *see also Hankerson v. United States*, 594 F. App'x 608, 609 (11th Cir. 2015) ("Hankerson has not demonstrated a clear right to relief against the Probation Office because, by definition, the Privacy Act only applies to federal agencies, not to federal courts."). Defendant accordingly cannot rely upon the Privacy Act to support his request for a subpoena of the chronological record, and he has cited to no other authority that would support issuance of such a subpoena. His request for a subpoena addressed to the Probation Office is denied.

Defendant's second subpoena request seeks information regarding the conduct of the criminal case in Nebraska from his former attorney, Mr. Howard. In particular,

- 4 -

Defendant apparently wishes to demonstrate that he was coerced into taking a plea. (*See* Dkt. 54 at 3-4). As the Court has explained to Defendant on multiple prior occasions, motions related to the terms of his supervised release are not a vehicle by which to rehash the validity of his guilty plea. Defendant's request for a subpoena to Mr. Howard is denied.

## II.  Motion for Early Termination of Supervision

### A.  Legal Standard

Section 3583(e)(1) of Title 18 of the United States Code states, in relevant part, as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. . . .

Thus, pursuant to the express terms of § 3583(e)(1), the general rule is that at least one year of supervised release must have been served, the applicable factors set forth at 18 U.S.C. § 3553(a) must be considered, and a court must be satisfied that the requested early termination is warranted by the conduct of the defendant and the interest of justice.

In addition, "[s]imply complying with the terms of [supervised release] . . . and not reoffending does not generally constitute the type of extraordinary circumstances justifying early termination. . . ." *United States v. Finkelshtein*, 339 F. Supp. 3d 135, 136 (W.D.N.Y. 2018); *see, e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law."); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)

("While [defendant's] . . . post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.").

### B. Defendant's Request for Early Termination

As an initial matter, the government takes that position that 18 U.S.C. § 3583(k), which provides that defendants convicted of certain sexual offenses are subject to a mandatory minimum of five years of supervised release, overrides the general one-year requirement set forth in 18 U.S.C. § 3583(e)(1). (*See* Dkt. 56 at 2 ("Pursuant to 18 U.S.C. § 3583(k), the mandatory minimum term of supervised release for a conviction for possession or receipt of child pornography is 5 years. To date, the defendant has only served approximately 2 years and 2 months of supervised release—less than half of the mandatory minimum 5-year term. Because he has not fulfilled the minimum term of supervised release required by § 3583(k), the defendant is not eligible for termination of supervision at this time.")).

The government has cited to no cases interpreting § 3583(k) in this fashion, nor has the Court discovered any such cases in its own research. To the contrary, other federal courts have considered the relevant § 3553(a) factors in cases where the request for early termination would cut the term of supervised release below the five-year minimum. *See, e.g., United States v. Todd*, No. 1:19-CR-00029-DCN, 2021 WL 2639034, at *2 (D. Idaho June 25, 2021); *United States v. Mathis*, 221 F. Supp. 3d 1131, 1133 (S.D. Iowa 2016). And at least one federal court has expressly rejected a similar argument. *See United States v. Scott*, 362 F. Supp. 2d 982, 983-84 (N.D. Ill. 2005) ("[A]ccording to the government,

'imposing' a term of supervised release 'of at least 4 years' requires an offender to serve at least 4 years without eligibility for the early termination allowed by § 3583(e).  Such a reading, however, strains the language and the congressional intent beyond reason. To be sure, § 841 imposes harsher sentences on persons convicted of drug crimes than of other criminal activity, imposing, for example, long mandatory minimum sentences of imprisonment. The *imposition* of these sentences required by § 841, however, cannot be read to require the full *service* of the sentences in the face of other statutes allowing relief from such service, such as § 3583(e)."  (emphasis in original)).

In any event, the Court need not decide the correctness of the government's position in this case, because considering the relevant factors set forth at 18 U.S.C. § 3553(a), Defendant's conduct, and the interest of justice, the Court does not find early termination warranted.  Defendant initially argues that the concept of supervised release in general is "probably unconstitutional" because it "imposes extra incarceration on defendants for violation the conditions of their supervised release."  (Dkt. 52 at 5).  This argument is foreclosed by binding precedent, *see, e.g., United States v. Peguero*, 34 F.4th 143, 157 (2d Cir. 2022) ("It is well-established in our Circuit that the supervised release revocation process, and its attendant procedural mechanisms, is constitutional." (collecting cases)), and cannot provide a basis for early termination of Defendant's supervised release.

Defendant next attacks the factual basis for his guilty plea.  As he has previously done, Defendant denies that he possessed in excess of 600 images of child pornography, arguing that the evidence allegedly showing the same was "absolutely inadmissible at

trial." (Dkt. 52 at 7).[2]  Defendant argues that the "nature and circumstances of the offense" are only that he visited a website containing child pornography on one occasion "for about 10 minutes" and accessed three images.  (*Id*. at 8).

Defendant's argument is unpersuasive.  Even if it were the purview of this Court to revisit the evidentiary rulings of the sentencing court—which it is not—the fact remains that Defendant acknowledged in the plea agreement that "[a] computer forensic analysis of the two hard drives" from his custom-built desktop computer "revealed well in excess of 600 images of child pornography and significant internet activity showing access to child pornography. . . .  Also seized from the defendant's home was a Fujitsu computer hard drive, which contained additional imagines depicting the lascivious display of the genitals of female prepubescent minors."  (Dkt. 36-2 at 4).  Further, without objection by Defendant, the sentencing court expressly found, and included in the presentence investigation report, that "there are 600 or more images that were found in the defendant's possession[.]"  (Dkt. 35-4 at 4).  This information is appropriately taken into account when considering Defendant's request for early termination.

Defendant further seeks early termination because he claims he is receiving "bad supervision" from the Probation Office.  (Dkt. 52 at 10-11).  The main crux of Defendant's complaint seems to be that his probation officer is not considering his individual circumstances, because he refused to recommend either early termination or removal of all

---

[2]    On direct appeal, the Eighth Circuit affirmed the sentencing court's denial of Defendant's motion in limine related to this evidence.  *See United States v. Cottom*, 679 F. App'x 518, 522 (8th Cir. 2017).  As has been repeatedly explained to Defendant (*see* Dkt. 19; Dkt. 33; Dkt. 41), this Court is not a proper venue to challenge that determination.

special conditions based on Defendant's status as a sex offender. (*Id*. at 11). However, the probation officer has explained that "The Sex Offender Management Procedures Manual issued by the Administrative Office of the U.S. Courts specifically notes that the nature and circumstances of the offense typically preclude sex offenders from being considered for early termination." (Dkt. 60 at 4). The probation officer's determination that Defendant's conduct does not warrant a departure from this general approach does not amount to "bad supervision."

Further, the Court finds Defendant's assertion that his probation officer has used the search condition "as a pretext to harass and degrade [Defendant] with home inspections every month" (Dkt. 52 at 11) without merit. As the probation officer has explained, there have been no searches of Defendant's home since he began his term of supervised release in this District. (Dkt. 60 at 3). The home inspections of which Defendant complains—which are different from a search because they are limited to observations of what is in plain view—are a routine type of behavior monitoring and are conducted in "every probation or supervised release case" in this District. (*Id*. at 3-4). There is simply no evidence that the probation officer has abused the search condition or singled out Defendant for harsh treatment.

Defendant also argues that his completion of sex offender treatment with RKKS Mental Health is a basis for early termination of his supervised release. (*See* Dkt. 52 at 8). While Defendant's completion of sex offender treatment is to his credit, the Court is also cognizant that Defendant refuses to acknowledge or take responsibility for his conduct, including via his continual reassertion of his evidentiary objections regarding the child

pornography that he acknowledged in his plea agreement was found on his computer. As the Court explained in its 2021 D&O, "common sense suggests that one must accept that a problem exists before being able to treat the problem." (Dkt. 41 at 13 n.5). Defendant's ongoing attempts to downplay his culpability and deny his conduct cause his completion of sex offender treatment to carry less weight than it might under other circumstances. Moreover, simply having completed sex offender treatment is not generally sufficient to justify early termination of supervised release. *See United States v. Solano*, No. 19-CR-17 (PKC), 2023 WL 4599937, at *2 (E.D.N.Y. July 18, 2023) ("Defendant's conduct largely amounts to complying with the terms of his supervised release, which have required him, among other things, to participate in substance abuse and sex offender treatment, which has in turn produced the positive developments noted above. But mere compliance with the terms of his supervision does not constitute 'exceptionally good behavior' that justifies early termination.").

In sum, and having considered the relevant § 3553(a) factors, Defendant's conduct, and the interest of justice, the Court concludes that granting Defendant's request for early termination of supervised release would be inappropriate.

### III.    Motion to Strike Special Conditions 4, 5, 6, 7, 8, 11, 12, and 13

#### A.    Legal Standard

"A court 'may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release' after considering certain sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (quoting 18 U.S.C. § 3583(e)(2)). While it is

relevant to the Court's analysis whether there are "new or changed circumstances with respect to the defendant," a finding of the same is not required to justify a modification. *Id*. Whether to grant a requested modification is within the Court's discretion. *See id*. (citing *United States v. Brown*, 402 F.3d 133, 136 (2d Cir. 2005)).

### B. Defendant's Request to Strike

In the 2021 D&O, this Court already considered and rejected a request by Defendant to strike Special Conditions 4, 5, 6, 7, 8, 11, 12, and 13. (Dkt. 41).³ Familiarity with the 2021 D&O is assumed for purposes of this discussion, and the Court fully incorporates herein its prior reasoning and conclusions.

Defendant has presented no new facts or arguments that cause the Court to find striking these Special Conditions appropriate at this time. As the Court has already explained, while the Court commends Defendant for his completion of sex offender treatment, it is not persuaded that such treatment has rendered him no longer a danger to reoffend or otherwise not in need of supervision.

Further, while Defendant contends that the challenged Special Conditions prevent him from engaging in a particular occupation (*see* Dkt. 52 at 1), his arguments are unpersuasive. As before, Defendant has not identified any specific job that he was unable to obtain because of the Special Conditions. To the contrary, he simply asserts in a conclusory fashion that he pursued employment in 2021 and 2022 but "found that all employers appeared to be egregiously violating NYS law regarding the hiring of applicants

---

³ The Court did slightly modify Special Condition 5, for reasons that are not relevant here. (Dkt. 41 at 10-11).

with convictions." (Dkt. 52 at 2). The Court can draw no conclusions regarding Defendant's ability to find employment based on this broad assertion, which is unsupported by any corroborating details.

Further, Defendant has formed an LLC and is offering computer-related services. (*See* Dkt. 62 at 2). While he contends that the Special Conditions have not allowed his business to "flourish" because he cannot offer the most in-demand services (*see id.*), there is a substantial difference between being prevented from engaging in a particular occupation in its entirety, and being limited (based on the crime of conviction) in performing certain types of services. Moreover, Defendant has not presented evidence beyond his own assertions regarding potential clients' willingness to engage him.

Defendant is a sophisticated computer user who was convicted of child pornography crimes involving the use of websites "on a clandestine network, accessible only with special software and designed to obscure a user's identity." *United States v. Cottom*, 679 F. App'x 518, 519 (8th Cir. 2017). His desire to seek more lucrative business opportunities as an independent computer analyst simply does not provide a basis for removing conditions of supervision that are necessary for, among other things, specific deterrence of future criminality, public protection, and rehabilitation. The Court accordingly will not strike the challenged Special Conditions at this time.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion for early termination of supervised release or, in the alternative to strike Special Conditions 4, 5, 6, 7, 8, 11, 12,

and 13 (Dkt. 52) is denied. Defendants' motions for subpoenas duces tecum (Dkt. 53; Dkt. 54) are also denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      August 23, 2023
            Rochester, New York